UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAZAYA TRADING CO. SARL,<br><br>      Plaintiff and Counterclaim-Defendant,<br><br>      - *against* -<br><br>VCS GROUP LLC,<br><br>      Defendant and Counterclaim-Plaintiff. | Case No. 11-CIV-3195 (WHP) (GWG)<br><br>ECF Case<br><br>**ANSWER AND COUNTERCLAIM** |

## ANSWER

Defendant VCS Group LLC ("Camuto" or "Defendant"), by and through its undersigned attorneys, submits the following Answer to the First Amended Complaint of Plaintiff Mazaya Trading Co. SARL ("Mazaya" or "Plaintiff") and Counterclaim.

## NATURE OF THE ACTION

1. Defendant denies the allegations in Paragraph 1 of the First Amended Complaint, except admits that Plaintiff and Defendant entered into a distribution agreement on or about August 26, 2009 (the "Distribution Agreement") and that Plaintiff purports to bring this action for damages. Defendant refers to the contents of the Distribution Agreement for the terms thereof, which, *inter alia*, granted Plaintiff the exclusive right to distribute designer footwear bearing trademarks whose rights were controlled by Camuto in only one Territory (as that term is defined in the Distribution Agreement), namely, Lebanon. Defendant states that, as set forth in greater detail in its Counterclaim below, it never "overcharg[ed]" Plaintiff for the footwear it purchased from Defendant. Indeed, Defendant always charged Plaintiff for that footwear in accordance with the terms of the Distribution Agreement. Plaintiff has breached its payment obligations to Defendant under the Distribution Agreement, however, in the amount of at least

$40,000. Defendant further states that it has never interfered with the contracts and business relationship between Plaintiff and one of its "customers," namely the Landmark Group ("Landmark"). In fact, the purported "interference" that Plaintiff complains of was, upon information and belief, a limited number of communications between Defendant and Landmark that Plaintiff was not only aware of *but expressly endorsed*.

## THE PARTIES

2.      Defendant denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the First Amended Complaint.

3.      Defendant denies the allegations in Paragraph 3 of the First Amended Complaint, except admits that VCS Group LLC is a limited liability company organized under the laws of the state of Delaware with a place of business at 411 West Putnam Avenue, Greenwich, Connecticut 06830.

## JURISDICTION AND VENUE

4.      Defendant admits that Plaintiff purports to base subject-matter jurisdiction on the statute cited in Paragraph 4 of the First Amended Complaint.

5.      Defendant admits that the language quoted in Paragraph 5 of the First Amended Complaint appears in the Distribution Agreement and refers to the contents of the Distribution Agreement for the terms thereof, and further admits that Plaintiff purports to base personal jurisdiction and venue on the statutes cited.

## FACTS

6.      Defendant denies having knowledge or information sufficient to form a basis as to the truth of the allegations in Paragraph 6 of the Amended Complaint.

7. Defendant denies the allegations in Paragraph 7 of the First Amended Complaint, except admits that it is the master licensee of various third party licensors for the manufacture and distribution in certain territories of footwear bearing the third party licensors' trademarks, including without limitation the trademarks LUCKY BRAND, BCBG MAX AZRIA, BCBGENERATION, AND JESSICA SIMPSON. Defendant states that it owns the trademark VINCE CAMUTO.

8. Defendant denies the allegations in Paragraph 8 of the First Amended Complaint, except admits that Plaintiff and Defendant entered into the Distribution Agreement on or about August 26, 2009. Defendant refers to the contents of the Distribution Agreement for the terms thereof but states that, under section 3 of the Distribution Agreement, Defendant granted Plaintiff the exclusive license to distribute certain footwear in only one Territory, namely, Lebanon.

9. Defendant denies the allegations in Paragraph 9 of the First Amended Complaint and refers to the contents of the Distribution Agreement for the terms thereof. Section 1.10 of the Distribution Agreement identifies Lebanon as the *only* Territory. Section 1.10 only contemplated the possibility that Defendant might consider additional countries to be added to the "Territory" on a non-exclusive basis as follows: "CAMUTO will entertain business plan proposals on a non-exclusive basis from Distributor for the following open territories: Jordan, Syria, Egypt, UAE, Kuwait, Bahrain, Qatar, Oman, [and] Saudi Arabia. If DISTRIBUTOR presents the best overall business plan proposal as determined by CAMUTO in its sole discretion for any given open territory, then the parties agree to negotiate an amendment to this Agreement to add such territory."

10. Defendant denies the allegations in Paragraph 10 of the First Amended Complaint, except denies having knowledge or information sufficient to form a basis as to the truth of the allegations that "[d]ue to local laws in Dubai, the store was to be opened by third

party Landmark Group ('Landmark'), with whom Mazaya had a distribution agreement to supply Camuto Footwear to be sold in the store in the Mirdiff City Center mall in Dubai (the 'Vince Camuto Store')" and "Mazaya also entered into agreements with Landmark to supply Landmark with non-Camuto Footwear to be sold in Landmark's other retail locations in Dubai." Rather, Defendant only granted Plaintiff a limited, non-exclusive right to distribute certain footwear in a store in the Mirdiff City Center mall in Dubai, but it did not grant any right to Plaintiff to distribute footwear in any other retail location in Dubai. Plaintiff has, over time, referred to non-party Landmark as its "partner," but despite Defendant's repeated requests Plaintiff has never adequately explained the nature and extent of its relationship with Landmark.

11.     Defendant denies the allegations in Paragraph 11 of the First Amended Complaint, except admits that from time to time Plaintiff sent Defendant various writings on the subject of this allegation, and from time to time Defendant responded thereto in writing, and refers to each of those writings for the true contents thereof.

12.     Defendant denies the allegations in Paragraph 12 of the First Amended Complaint, except denies having knowledge or information sufficient to form a basis as to the truth of the allegation concerning Plaintiff's "distributi[on of] Camuto Footwear to Landmark to sell in the Vince Camuto Store." As Plaintiff knows by virtue of having negotiated the 38-page Distribution Agreement, Defendant only grants "formal approval" to a distributor to exclusively distribute licensed goods in any particular store or territory pursuant to a detailed written agreement.

13.     Defendant denies the allegations in Paragraph 13 of the First Amended Complaint and refers to the contents of the Distribution Agreement for the terms thereof. The entirety of section 1.7 of the Distribution Agreement states the following: "'Product Price' means the purchase price for the Products that DISTRIBUTOR must pay to CAMUTO, which will be calculated as set forth on Exhibit B. All duties and freight costs are the

DISTRIBUTOR's responsibility."  Exhibit B to the Distribution Agreement states, *inter alia*, "First Cost Current plus fifteen percent (15%), plus additional cost [royalty and advertising percentages identified below for each Product line].  As used herein, First Cost shall mean the factory invoice price of such Product plus all applicable buying commissions."  (The brackets and bracketed language appear in Exhibit B.)  Upon information and belief, the purported "overcharg[es]" that Plaintiff complains of are in fact the "duties and freight costs" that it expressly agreed to pay under, *inter alia*, section 1.7 of the Distribution Agreement.

14. Defendant denies the allegations in Paragraph 14 of the First Amended Complaint, except admits that the quoted language appears in section 10 of the Distribution Agreement and refers to the contents of the Distribution Agreement for the terms thereof.

15. Defendant denies the allegations in Paragraph 15 of the First Amended Complaint, except admits that the quoted language appears in section 18.2 of the Distribution Agreement and refers to the contents of the Distribution Agreement for the terms thereof.

16. Defendant denies the allegations in Paragraph 16 of the First Amended Complaint.  Plaintiff fails to state that, pursuant to sections 1.7 and 5.1 of the Distribution Agreement, it expressly agreed that "[a]ll duties and freight costs are the DISTRIBUTOR's responsibility."  Upon information and belief, the purported "overcharg[es]" that Plaintiff complains of are, in fact, the duties and freight costs that Plaintiff expressly agreed to pay for under those sections.

17. Defendant denies the allegations in Paragraph 17 of the First Amended Complaint.  Upon information and belief, the purported "overcharg[es]" that Plaintiff complains of are, in fact, the duties and freight costs that Plaintiff expressly agreed to pay for in sections 1.7 and 5.1 of the Distribution Agreement.

18.     Defendant denies the allegations in Paragraph 18 of the First Amended Complaint.  Indeed, as set forth in greater detail in the Counterclaim below, Plaintiff has breached the terms of the Distribution Agreement by failing to pay Defendant at least $40,000 for certain footwear that it ordered and that Defendant shipped to it.

19.     Defendant denies the allegations in Paragraph 19 of the First Amended Complaint.

20.     Defendant denies the allegations in Paragraph 20 of the First Amended Complaint.

21.     Defendant denies the allegations in Paragraph 21 of the First Amended Complaint and refers to the contents of the Distribution Agreement for the terms thereof. Although section 10 of the Distribution Agreement prohibits each party's disclosure of *the other party's* Confidential Information (as that term is defined in the Distribution Agreement) to certain third parties, it does not prohibit either party from disclosing *its own* Confidential Information to any third party.  In addition, either party may, in connection with its rights and obligations under the Distribution Agreement, disclose the other party's Confidential Information to its "affiliates, employees, attorneys and accountants."

22.     Defendant denies the allegations in Paragraph 22 of the First Amended Complaint and refers to the contents of the Distribution Agreement for the terms thereof. Although section 10 of the Distribution Agreement limits the third parties to whom the parties may disclose the "terms and conditions" of the Distribution Agreement, it expressly allows "each party [to] disclose the terms of this [Distribution] Agreement to its attorneys, agents and accountants and other business representatives, provided that such parties shall be bound by the confidentiality terms provided herein."

23.     Defendant denies the allegations in Paragraph 23 of the First Amended Complaint.  Indeed, the only information that Defendant disclosed to Landmark was its own Confidential Information.  But even if it had disclosed any of Plaintiff's Confidential Information to Landmark, any disclosure to Landmark would have been permissible under section 10 of the Distribution Agreement because Landmark is an "affiliate[]" and "business representative[]" of Plaintiff.

24.     Defendant denies the allegations in Paragraph 24 of the First Amended Complaint.  Defendant states, upon information and belief, that the meetings between representatives of Landmark and Defendant were, in fact, expressly endorsed by Plaintiff.

25.     Defendant denies the allegations in Paragraph 25 of the First Amended Complaint.

26.     Defendant denies the allegations in Paragraph 26 of the First Amended Complaint.

27.     Defendant denies the allegations in Paragraph 27 of the First Amended Complaint, except denies having knowledge or information sufficient to form a belief as to the truth of the allegation that "Landmark has cancelled its current orders, thereby breaching its current valid and binding contracts, with Mazaya and informed Mazaya that Landmark intends to close the Vince Camuto Store and terminate its entire business relationship with Mazaya, even regarding non-Camuto Footwear, which has resulted and will result in lost sales, profits and opportunities for Mazaya.  Moreover, Camuto's actions have damaged Mazaya's reputation in its business dealings with Landmark and caused a lack of trust on the part of Landmark with respect to Mazaya."

28.     Defendant denies the allegations in Paragraph 28 of the First Amended Complaint.

## Count I
### (Breach of the Distribution Agreement – Overcharges)

29. Defendant repeats and realleges each and every response to Paragraphs 1 through 28 of the First Amended Complaint above as if fully set forth herein.

30. Defendant admits the allegations in Paragraph 30 of the First Amended Complaint.

31. Defendant denies the allegations in Paragraph 31 of the First Amended Complaint.

32. Defendant denies the allegations in Paragraph 32 of the First Amended Complaint.

33. Defendant denies the allegations in Paragraph 33 of the First Amended Complaint.

34. Defendant denies the allegations in Paragraph 34 of the First Amended Complaint.

## Count II
### (Breach of the Distribution Agreement – Disclosure of Confidential Information)

35. Defendant repeats and realleges each and every response to paragraphs 1 through 34 of the First Amended Complaint above as if fully set forth herein.

36. Defendant admits the allegations in Paragraph 36 of the First Amended Complaint.

37. Defendant denies the allegations in Paragraph 37 of the First Amended Complaint.

38. Defendant denies the allegations in Paragraph 38 of the First Amended Complaint.

39. Defendant denies the allegations in Paragraph 39 of the First Amended Complaint.

40. Defendant denies the allegations in Paragraph 40 of the First Amended Complaint.

### Count III
### (Breach of the Distribution Agreement – Duty of Good Faith and Fair Dealing)

41. Defendant repeats and realleges each and every response to paragraphs 1 through 40 of the Complaint above as if fully set forth herein.

42. The allegation in Paragraph 42 of the First Amended Complaint purports to state a legal conclusion to which no response is required.

43. Defendant admits the allegations in Paragraph 43 of the First Amended Complaint.

44. Defendant denies the allegations in Paragraph 44 of the First Amended Complaint.

45. Defendant denies the allegations in Paragraph 45 of the First Amended Complaint.

46. Defendant denies the allegations in Paragraph 46 of the First Amended Complaint.

47. Defendant denies the allegations in Paragraph 47 of the First Amended Complaint.

## Count IV
### (Intentional Interference with Contract)

48. Defendant repeats and realleges each and every response to paragraphs 1 through 47 of the Complaint above as if fully set forth herein.

49. Defendant denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 of the First Amended Complaint.

50. Defendant denies the allegations in Paragraph 50 of the First Amended Complaint.

51. Defendant denies the allegations in Paragraph 51 of the First Amended Complaint.

52. Defendant denies the allegations in Paragraph 52 of the First Amended Complaint.

53. Defendant denies the allegations in Paragraph 53 of the First Amended Complaint, except denies having knowledge or information sufficient to form a belief as to the truth of the allegation that "Landmark has breached its current contracts with Mazaya[,] thus resulting in harm to Mazaya" contained in Paragraph 53 of the First Amended Complaint.

54. Defendant denies the allegations in Paragraph 54 of the First Amended Complaint.

## Count V
### (Intentional Interference with Prospective Economic Advantage)

55. Defendant repeats and realleges each and every response to paragraphs 1 through 54 of the First Amended Complaint above as if fully set forth herein.

56. Defendant denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the First Amended Complaint.

57. Defendant denies the allegations in Paragraph 57 of the First Amended Complaint.

58. Defendant denies the allegations in Paragraph 58 of the First Amended Complaint.

59. Defendant denies the allegations in Paragraph 59 of the First Amended Complaint.

60. Defendant denies the allegations in Paragraph 60 of the First Amended Complaint, except denies having knowledge or information sufficient to form a belief as to the truth of the allegation that "Landmark has informed Mazaya that Landmark intends to close the Vince Camuto Store and terminate its entire business relationship with Mazaya, even with respect to non-Camuto Footwear, resulting in harm to Mazaya."

61. Defendant denies the allegations in Paragraph 61 of the First Amended Complaint, except denies having knowledge or information sufficient to form a belief as to the truth of the allegation that "Landmark would have continued its business relationship with Mazaya, whereby Mazaya would have continued to sell footwear to Landmark."

62. Defendant denies the allegations in Paragraph 62 of the First Amended Complaint.

## RESPONSE TO PRAYER FOR RELIEF

Defendant denies any allegations set forth in its prayer for relief and denies that Plaintiff's claims have any basis in fact or law or that Plaintiff is entitled to any of the relief that it seeks.

To the extent that any allegation of the Complaint has not been responded to in the preceding paragraphs, it is denied.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant alleges the following affirmative defenses to the First Amended Complaint and in doing so does not concede that it bears the burden of proof or persuasion on any of them:

### FIRST DEFENSE

Plaintiff fails to state a claim, in whole or in part, upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims, if any, are barred, in whole or in part, by the doctrine of unclean hands.

### THIRD DEFENSE

Plaintiff's claims, if any, are barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

### FOURTH DEFENSE

Plaintiff's claims, if any, are barred, in whole or in part, by its failure to suffer any cognizable damages.

### FIFTH DEFENSE

Plaintiff's claims, if any, are barred, in whole or in part, by its failure to mitigate any alleged damages.

**SIXTH DEFENSE**

Plaintiff's claims, if any, are barred by its own breaches of the Distribution Agreement.

**SEVENTH DEFENSE**

Plaintiff's alleged damages, if any, are speculative, and thus are not recoverable.

**EIGHTH DEFENSE**

Plaintiff's alleged damages, if any, are barred in whole or in part by the terms of the Distribution Agreement.

**NINTH DEFENSE**

Defendant reserves the right to raise additional affirmative and other defenses as may be established by discovery and the evidence in this proceeding.

**COUNTERCLAIM**

Counterclaim-Plaintiff VCS Group LLC ("Counterclaim-Plaintiff" or "Camuto"), by and through its undersigned attorneys, brings this Counterclaim against Counterclaim-Defendant Mazaya Trading Co. SARL ("Counterclaim-Defendant" or "Mazaya"), and alleges as follows:

**NATURE OF THIS ACTION**

1. This Counterclaim arises out of the same contract, the Distribution Agreement (defined above in ¶ 1), that Mazaya purports to give rise to its claims in this Action. More specifically, this Counterclaim concerns Mazaya's repeated breaches of the Distribution Agreement's payment terms as a result of its refusal to pay Camuto amounts due and owing for Products (as that term is defined in the Distribution Agreement) that Mazaya ordered from Camuto

and Camuto shipped to Mazaya.  Upon information and belief, Mazaya brought this Action in an attempt to avoid paying Camuto those amounts that are due and owing.

    2. Section 11.3 of the Distribution Agreement obligates Mazaya to pay Camuto amounts due within 90 calendar days after receiving an invoice from Camuto for Products ordered.

    3. Mazaya ordered Products from Camuto on or about January 20, 2010; April 7, 2010; June 30, 2010; July 1, 2010; July 21, 2010; August 17, 2010; and September 22, 2010. The Products were shipped to Mazaya on or about January 25, 2011 and February 4, 2011.

    4. Camuto transmitted to Mazaya the invoices for the Products identified in Paragraph 3 on or about January 25, 2011 and February 4, 2011.  Mazaya did not pay those invoices within 90 calendar days after receiving them and, indeed, has still not paid them.

    5. At the time that Mazaya filed this Action, it owed Camuto approximately $108,000 for Products that Camuto had shipped to it but for which Mazaya had failed to pay the amounts due within 90 calendar days after receiving the invoices for those shipments.

    6. Since the date that Mazaya filed this Action, Camuto has been able to draw approximately $60,000 from a stand-by letter of credit that Mazaya established in accordance with section 11.2 of the Distribution Agreement.  Camuto has drawn approximately $60,000 from that letter of credit pursuant to the following right in section 11.2:  "In the event that DISTRIBUTOR does not pay for any Products within thirty (30) days of when such payment is due, CAMUTO may draw the amount of the invoice from the Letter of Credit . . . ."

## Count I
### (Breach of the Distribution Agreement)

7. Camuto repeats and realleges the allegations set forth above in paragraphs 1 through 6 as if fully set forth herein.

8. The Distribution Agreement is valid, binding, and enforceable against Mazaya.

9. Camuto has fulfilled all of its obligations, including any conditions precedent, under the Distribution Agreement.

10. Mazaya breached the Distribution Agreement by refusing to pay Camuto for its purchases of Products.

11. Mazaya's breach of the Distribution Agreement was material.

12. As a direct result of Mazaya's breach of the Distribution Agreement, Camuto has sustained damages in an amount to be determined at trial by the trier of fact, but currently believed to be in excess of forty thousand dollars ($40,000), plus interest.

WHEREFORE, Camuto respectfully requests that this Court enter judgment in its favor and against Mazaya as follows:

A. Award Camuto monetary damages arising from Mazaya's breach of the Distribution Agreement in an amount to be proven at trial.

B. Award Camuto its costs, expenses, reasonable legal fees, and such other further relief as the court deems just and proper.

Dated: New York, New York
October 7, 2011

CAHILL GORDON & REINDEL LLP

By: s/ Thomas J. Kavaler
Thomas J. Kavaler (tkavaler@cahill.com)
John O. Enright (jenright@cahill.com)
80 Pine Street
New York, NY 10005-1702
Telephone: (212) 701-3000
Fax: (212) 269-5420

*Attorneys for Defendant and Counterclaim-Plaintiff*